# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICKEY CLARK, )<br>　　　　　　Movant, )<br>　　　　　　　　　　　　)<br>　　　v. )<br>　　　　　　　　　　　　)<br>UNITED STATES OF AMERICA, )<br>　　　　　　　　　　　　)<br>　　　　　　Respondent. ) | Case No. 10 C 1912<br><br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION & ORDER

Rickey Clark ("Mr. Clark") moves to vacate his sentence and conviction pursuant to 28 U.S.C. § 2255. Mr. Clark claims that his trial counsel was ineffective in failing to demand that the government play two recorded conversations of drug transactions during a drug-quantity hearing and in failing to advise him of the mandatory minimum sentence prior to his decision to plead guilty.

### I. FACTUAL BACKGROUND

The factual background surrounding the underlying conviction and sentence Mr. Clark attacks is set forth in *United States v. Clark*, 538 F.3d 803 (7th Cir. 2008).

Mr. Clark pleaded guilty without the benefit of a plea agreement to one count of conspiring to possess cocaine with the intent to distribute, *see* 21 U.S.C. § 846, and one count of possessing cocaine with the intent to distribute, *see* 21 U.S.C. § 841. During the change of plea hearing, the government represented that it believed Mr. Clark possessed at least fifteen kilograms of cocaine. Mr. Clark, on the other hand, insisted that he possessed less than one kilogram of cocaine.

After Mr. Clark's change of plea, the court held a hearing to determine the drug quantity accountable to Mr. Clark. In order to prove the amount of cocaine involved, the government presented the testimony of Juan Corral, the cocaine dealer who supplied Mr. Clark. Corral first testified about the coded-language that he and Mr. Clark used during their relationship. Next, Corral estimated the amount of drugs he sold to Mr. Clark. Mr. Corral qualified his testimony, noting that he was not one-hundred percent certain and that he testified to the best of his knowledge. Corral testified that he made a conservative estimate of the amount of cocaine that Mr. Clark purchased. According to Corral, he sold Mr. Clark at least three kilograms of cocaine during every transaction between them and that had once sold eight kilograms to Mr. Clark in a single transaction. Corral further believed he sold cocaine to Mr. Clark on a monthly basis for approximately five months. Thus, Corral estimated that he sold Mr. Clark at least seventeen kilograms of cocaine.

The court was not convinced that Corral's estimate provided a sufficiently precise basis to calculate Mr. Clark's drug quantity. Accordingly, the court asked the government about the number of drug transactions it could prove through the use of recorded conversations between Mr. Clark and Corral. The government identified two such transactions, one occurring on May 14, 2002 and one on June 5, 2002.[1] In presenting evidence of these transactions, the government relied upon the complaint affidavit of the drug enforcement agent who had summarized transcripts of recorded conversations between Corral and Mr. Clark and did not produce the actual recordings. Mr. Clark objected to the use of the complaint affidavit because it was not subject to

---

[1] The government had two recordings from the June 5, 2002 transaction. In the first, Corral informed Mr. Clark that he would call him later in the day. In the second, Corral discussed a five to six kilogram purchase of cocaine.

cross-examination. The court overruled Mr. Clark's objection. In each of the transactions, Mr. Clark agreed to purchase at least five kilograms of cocaine.

At the conclusion of the hearing, the court found that the recorded conversations corroborated Corral's testimony about the kind of customer that Mr. Clark was. The court found that Corral had been truthful and conservative in his estimate of the amount of drugs he sold to Mr. Clark. Further, the court found that the combination of Corral's estimate and the summarized wiretaps provided sufficient evidence to conclude that Mr. Clark was responsible for more than fifteen kilograms of cocaine and thus subject to a ten-year mandatory minimum sentence. The court sentenced Mr. Clark to a term of imprisonment of 120 months.

On appeal, Mr. Clark challenged the court's drug-quantity findings. First, Mr. Clark argued that the court erred in finding that Corral's testimony and the affidavit of the drug enforcement agent proved by a preponderance of the evidence that the drug quantity exceeded fifteen kilograms. The Seventh Circuit rejected this argument, noting that a court may "'calculate drug quantity by taking a witness's estimate of the amount of drugs she usually purchased and multiplying it by the number of times she bought drugs from the defendant.'" *Clark*, 538 F.3d at 813 (quoting *United States v. White*, 360 F.3d 718, 720 (7th Cir. 2004)). Second, Mr. Clark argued that Corral was not credible. The Seventh Circuit rejected this argument as well. *Id.* Finally, Mr. Clark argued that the court erred in relying on the complaint affidavit. In rejecting this argument, the Seventh Circuit further noted that the Sentencing Guidelines allow courts to "'consider information without regard to its admissibility under the rules of evidence applicable at

trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.'" *Id.* at 813-14 (quoting U.S.S.G. 6A1.3(a)).

Mr. Clark petitioned for a writ of *certiorari* from the United States Supreme Court. The Supreme Court denied his request on March 23, 2009. Mr. Clark filed this 2255 motion on March 22, 2010, and therefore it is timely.

## II. STANDARD OF REVIEW

Mr. Clark challenges his detention pursuant to 28 U.S.C. § 2255. Section 2255 is an extraordinary remedy because it asks the district court "to reopen the criminal process to a person who has already had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). A collateral attack pursuant to § 2255 is not a substitute for a direct appeal. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2005). Unless a movant demonstrates changed circumstances in fact or law, a movant may not raise issues already decided on direct appeal. *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). In addition, a movant procedurally defaults constitutional claims that could have been raised on direct appeal, but were not. *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008). A movant cannot raise procedurally defaulted claims unless he can demonstrate: (1) cause and prejudice; or (2) that he is "actually innocent." *Id.*

The federal *habeas* corpus statute provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

4

28 U.S.C. § 2255.

A district court may dismiss a § 2255 motion without holding an evidentiary hearing where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010). Where a petitioner alleges facts that, if true, would entitle him to relief, a court should hold an evidentiary hearing to determine the veracity of the petitioner's allegations. *Lafuente*, 617 F.3d at 946. In order to allege facts sufficient to receive an evidentiary hearing, a movant must submit a sworn affidavit with specific facts supporting the movant's assertion that he is entitled to relief. *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 7th Cir. 2006). The affidavit must be detailed and specific. Vague, conclusory or palpably incredible assertions are insufficient. *Id.* A district court may consider all the circumstances in the record in determining whether to grant a movant an evidentiary hearing. *Gallo-Vasquez v. United States*, 402 F.3d 793, 797 (7th Cir. 2005).

### III. ANALYSIS

Mr. Clark argues that his trial counsel was ineffective in failing to require the government to produce recordings of the conversations between himself and Corral during his sentencing hearing and in failing to advise him about the mandatory minimum sentence prior to his plea.

To prevail on an ineffective-assistance-of-counsel claim, a movant must demonstrate that his counsel's performance was objectively unreasonable and resulted in a substantial risk of prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hutchings v. United States*, 618 F.3d 693, 696 (7th Cir.

5

2010). Failure to establish either prong is fatal to a petitioner's claim. *Gant v. United States*, 627 F.3d 677, 682 (7th Cir. 2010). Review of counsel's performance is highly deferential, and counsel is presumed to have acted effectively. *Hutchings*, 618 F.3d at 696. A court's review of counsel's competency must be deferential "[t]o reflect the wide range of competent legal strategies and avoid the pitfalls of review in hindsight." *Li v. United States*, 648 F.3d 524, 527-28 (7th Cir. 2011). In order to demonstrate that counsel's performance was deficient, a movant must provide evidence to overcome the presumption that trial counsel exercised sound reason for a strategic decision. *Smith v. Gaetz*, 565 F.3d 346, 352-53 (7th Cir. 2009). To demonstrate prejudice, a movant must present evidence to show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### A. Counsel's Failure to Procure June 5 Recordings

Mr. Clark first argues that his trial counsel was ineffective in failing to challenge the government's reliance on the complaint affidavit to prove his involvement in the June 5th drug transaction.[2] Mr. Clark argues that had his trial counsel played the recordings from the June 5th drug transaction, the court would not have found that he purchased cocaine from Corral on that day. Mr. Clark admits that he participated in a conversation with Corral on the morning of June 5th that was intercepted and recorded by the government, but asserts that he and Corral did not discuss a drug purchase in this conversation. He next asserts that he did not participate in a conversation with Corral in the afternoon of June 5th, during which a drug purchase was negotiated. Finally, Mr. Clark alleges that he informed his trial counsel that he did not discuss a drug purchase with Corral on June 5th, but that his trial counsel failed to make use of this information.

---

[2] Importantly, Mr. Clark does not challenge his participation in the May 14th transaction.

If the court construes Mr. Clark's argument liberally, he seems to argue that his trial counsel failed to present exculpatory information --- namely, that he was not a participant in the June 5th drug transaction. According to Mr. Clark, the court could not have relied upon the June 5th drug transaction to support its drug-quantity finding if his counsel had challenged the evidence presented by the government of his involvement in that transaction. Mr. Clark suggests that the court therefore could not have found that he conspired to possess more than fifteen kilograms of cocaine because no evidence corroborated Corral's testimony that he purchased cocaine on a monthly basis.

A trial counsel's failure to engage in a scavenger hunt for potentially exculpatory information does not constitute deficient performance. *Koons v. United States*, 639 F.3d 348, 354 (7th Cir. 2011). On the other hand, where a defendant provides specific exculpatory information, a trial counsel's failure to investigate that information, without any objectively reasonable basis, can constitute ineffective assistance. *Bruce v. United States*, 256 F.3d 592, 598-99 (7th Cir. 2001). Mr. Clark argues that he provided specific exculpatory information to his counsel concerning his involvement in the June 5th drug transaction, which counsel did not investigate or present to the court. Therefore, he argues, his trial counsel's performance was deficient.

The government responds that Mr. Clark cannot demonstrate that his trial counsel's performance was deficient because the Seventh Circuit already considered and rejected Mr. Clark's argument that the tapes needed to have been played during the drug-quantity hearing. But the Seventh Circuit's decision that the court could rely on the complaint affidavit in the absence of direct evidence of the recorded conversations does not address whether Mr. Clark's trial counsel should have presented those recordings to

demonstrate that Mr. Clark was not a participant in a June 5th drug transaction with Corral. The government also argues that trial counsel's performance was not deficient because Mr. Clark was in fact a participant in the June 5th drug transaction.[3] The court, however, cannot summarily dismiss a *habeas* motion where the movant alleges to facts that, if true, would warrant relief. *Lafuente*, 617 F.3d at 946 (noting that a movant's detailed affidavit may be sufficient to warrant an evidentiary hearing or further investigation of the movant's claims).

The court need not decide whether Mr. Clark's allegations are sufficient to call into question trial counsel's performance because Mr. Clark cannot demonstrate that any allegedly deficient performance prejudiced him. Mr. Clark is correct that the court expressed reluctance to estimate a drug-quantity based solely on Corral's memory, which the court described as "not good enough." The court found that Corral's testimony lacked sufficient precision to support a finding regarding the quantity of drugs that were attributable to Mr. Clark. Consequently, the court required the government to produce additional evidence beyond Corral's testimony to support its position on the amount of drugs that Mr. Clark possessed. The government presented the recordings of wiretapped conversations from May 14th and June 5th.

However, even if the court puts aside all evidence of the June 5th drug transaction, Mr. Clark was still responsible for five kilograms of cocaine because Mr. Clark does not challenge his participation in the May 14th transaction where he purchased five kilograms of cocaine from Corral. Where the amount of cocaine involved in the conviction is five or more kilograms, Congress has specified a mandatory

---

[3] In support, the government points to: (1) its agents' review and assessment of Mr. Clark's voice on the call; (2) the context of the conversation as a continuation of the earlier June 5th conversation (in which Mr. Clark admits he participated); and (3) the phone number associated with the conversation.

minimum sentence of ten years. 21 U.S.C. § 841(b)(1)(A)(ii); *Clark*, 538 F.3d at 811. Consequently, even if Mr. Clark proves his allegations, the ten-year mandatory minimum would still apply. The court sentenced Mr. Clark to a term of imprisonment of 120 months, and therefore he could not have been prejudiced by his attorney's failure to present evidence that he did not participate in a drug transaction with Corral on June 5th.

### B.     *Failure to Advise*

Mr. Clark also claims that his attorney failed to advise him that he faced a ten year mandatory minimum if he pleaded guilty and the court found that he possessed more than fifteen kilograms of cocaine. This argument, however, is belied by the record. At Mr. Clark's change of plea hearing, the government informed Mr. Clark that it believed the mandatory minimum penalty was ten years. The court inquired of defense counsel whether he agreed with the government, and defense counsel represented that he believed that the facts would demonstrate that a mandatory minimum penalty of five years was mandated. Defense counsel further represented that he explained to Mr. Clark that the sentence was driven largely by the amount of narcotics found by the court during a sentencing hearing. The court then explained to Mr. Clark that it would later make factual findings regarding the amount of cocaine involved and that those findings would drive the determination of which mandatory minimum sentence applied. Mr. Clark admitted that he understood that a mandatory minimum sentence of ten years was possible and that he could not withdraw his guilty plea simply because the court found that a ten-year mandatory minimum sentence was applicable. Therefore, Mr. Clark's failure-to-advise claim is contrary to the record and necessarily fails.

### IV. Conclusion

None of Mr. Clark's ineffective-assistance-of-counsel claims have merit. The court therefore denies his motion to vacate his conviction and sentence.

Pursuant to 28 U.S.C. § 2253, the court must determine whether to issue a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). The court may issue such a certificate only if the applicant has made a substantial showing of the denial of a constitutional claim. 28 U.S.C. § 2253(c)(2). A "substantial showing" is one that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). No reasonable jurist could conclude that Mr. Clark's claim that his counsel should have investigated the June 5th drug transaction prejudiced him because, given the other evidence presented at the drug-quantity hearing, Mr. Clark remained responsible for five kilograms of cocaine, an amount which was sufficient to trigger the mandatory minimum. Further, Mr. Clark's claim that his attorney was ineffective in failing to warn him of the potential mandatory minimum sentence is so clearly contrary to the factual record before the court that no reasonable jurist could find it has merit. The court therefore declines to issue a certificate of appealability.

**ENTER:**

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 10, 2012